UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINALD EUGENE PURNELL,<br>Plaintiff,<br>v.<br>HP HOOD, LLC,<br>Defendant. | No. 2:25-cv-02922-DJC-SCR<br><br>ORDER |

Defendant HP Hood, LLC removed this putative class action from Sacramento County Superior Court, asserting this Court had both federal question and diversity jurisdiction over this case. Because the Court finds it has neither, Plaintiff's Motion to Remand is granted.

**BACKGROUND**

As the facts and procedural history are known to the parties, the Court will only recount them as necessary. Plaintiff's Motion to Remand is fully briefed. (Mot. (ECF No. 13); Opp'n (ECF No. 15); Reply (ECF No. 17).) Pursuant to Local Rule 230(g), the Court ordered this motion submitted without oral argument. (ECF No. 23.)

**LEGAL STANDARD**

"A motion to remand is the proper procedure for challenging removal." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing 28

U.S.C. § 1447(c)). Generally, courts "strictly construe the removal statute against removal jurisdiction."[1] *Acad. of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1068 (9th Cir. 2021). The party asserting federal subject matter jurisdiction bears the burden of establishing its existence. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

A case may be removed to federal court if that court would have jurisdiction over the matter. *See* 28 U.S.C. § 1441; *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009). Subject matter jurisdiction exists in civil cases involving a federal question or diversity of citizenship. 28 U.S.C. §§ 1331, 1332.

Federal question jurisdiction is met where the action "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[T]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998). A defense is not part of a plaintiff's properly pleaded statement of their claim. *Id.*

Diversity jurisdiction exists for all suits, including class-action suits, where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and is between parties with diverse citizenship. 28 U.S.C. § 1332(a). There must be complete diversity between the parties, meaning that "each plaintiff must be diverse from each defendant." *Lee v. Am. Nat. Ins. Co.*, 260 F.3d 997, 1004 (9th Cir. 2001). "Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that

---

[1] This presumption applies even though this case is a putative class action. Though this presumption would not apply in a case removed pursuant to the Class Action Fairness Act, *see Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014), Defendant did not remove pursuant to that statute, instead removing pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C § 1446(a), thus invoking generic diversity jurisdiction. (*See* Notice of Removal ¶¶ 2, 33; Opp'n at 8.)

the amount in controversy meets the jurisdictional threshold." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (per curiam). A removing party may rely on a chain of reasoning that includes assumptions. *Rosenwald v. Kimberly-Clark Corp.*, 152 F.4th 1167, 1176 (9th Cir. 2025). These assumptions must reflect more than "mere speculation and conjecture." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). Such assumptions require "some reasonable ground underlying them," *id.* at 1199, but they "need not be proven." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019). Assumptions may be reasonable if they are "founded on the allegations of the complaint." *Id.* at 925.

The Ninth Circuit has explained that a plaintiff's motion to remand is "the functional equivalent of a defendant's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1)." *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014). As such, a motion to remand may be based on either a facial or factual attack on the defendant's jurisdictional allegations. *See id.* In a facial attack, the challenger takes the allegations as true but challenges whether those allegations are sufficient to invoke jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite*, 749 F.3d at 1121. "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Meyer*, 373 F.3d at 1039. A factual attack typically introduces evidence outside the pleadings, and the party asserting federal jurisdiction must then "support [their] jurisdictional allegations with 'competent proof' under the same evidentiary standard that governs in the summary judgment context." *Leite*, 749 F.3d at 1121 (citations omitted). "[I]f the

existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself." *Id.*

## DISCUSSION

Defendant asserts this Court has both federal question and diversity jurisdiction over this case. (Notice of Removal (ECF No. 1) ¶¶ 1–2; Opp'n at 6.)

### I. Federal Question Jurisdiction

Defendant asserts this Court has federal question jurisdiction because resolution of Plaintiff's claims will require the Court to interpret Plaintiff's collective bargaining agreement ("CBA"). (Opp'n at 16.) According to Defendant, interpretation of this CBA renders such claims preempted by the Labor Management Relations Act ("LMRA") and converts the claim into a federal question over which the federal court has jurisdiction. (*Id.*)

Generally, "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). However, the "complete pre-emption doctrine" supplies an exception to this rule. *Id.* (quotation omitted). "On occasion, the Court has concluded that the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* (quotation omitted).

Section 301 of the LMRA is a "mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts" requiring federal courts to exercise jurisdiction over federal labor law claims. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985). Where a CBA governs the claim against an employer, § 301 of the LMRA preempts the claim and converts it to a federal question over which the federal court has jurisdiction. *See Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). In effect, this section "displace[s]

entirely any state cause of action for violation of contracts between an employer and a labor organization," *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 23 (1983) (quotation omitted), such that "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393. However, "a defendant cannot, merely by injecting a federal question into an action . . . transform the action into one arising under federal law." *Id.* at 399 (emphasis omitted).

The Ninth Circuit established a two-step test in *Burnside v. Kiewit Pac. Corp.* to determine whether a state-law claim is preempted by § 301. 491 F.3d at 1059–60. The first step looks at "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law" or if the right is granted by the CBA. *Id.* at 1059. If the cause of action stems only from the CBA, then the claim is preempted. *Id.* If not, the Court must decide whether the claim is "substantially dependent" on the terms of the CBA by considering "whether the claim can be resolved by looking to versus interpreting the CBA." *Id.* at 1060 (quotation omitted). Where a state-law claim has been found to be substantially dependent on a CBA typically, "that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1034 (9th Cir. 2016).

On the first step, the Court does not find, and Defendant does not argue, that any of Plaintiff's claims involves a right granted by the CBA. (*See* Opp'n at 16 (solely arguing that Plaintiff's fourth cause of action is "preempted under the second prong in the *Burnside* analysis").) The First Amended Complaint asserts seven claims, all of which derive from California law rather than the CBA. (*See* Compl. (ECF No. 7).) As the CBA is not the "only source of the right the plaintiff seeks to vindicate," there is no federal question jurisdiction under *Burnside* step one. *Renteria-Hinojosa v. Sunsweet Growers, Inc.*, 150 F.4th 1076, 1089 (9th Cir. 2025) (quotation omitted).

Turning to the second step, the Court finds none of Plaintiff's claims substantially depend on the CBA. "Claims are only preempted at step two to the extent there is an active dispute over the meaning of contract terms." *Id.* at 1089 (quotation omitted). "When the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994). "[I]nterpretation implies discordance over the meaning of a term that requires authoritative explication." *Cuellar-Ramirez v. US Foods, Inc.*, No. 16-cv-00085-RS, 2016 WL 1238603, at *5 (N.D. Cal. Mar. 22, 2016). "A creative linkage between the subject matter of the claim and the wording of a CBA provision is insufficient." *Cramer v. Consol. Freightways Inc.*, 255 F.3d 683, 692 (9th Cir. 2001), *as amended* (Aug. 27, 2001).

Defendant argues Plaintiff's "fourth cause of action for unreimbursed business expenses requires the interpretation of the CBA's provisions." (Opp'n at 16.) To succeed on a § 2802 claim, Plaintiff must establish that "(1) the employee made expenditures or incurred losses; (2) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (3) the expenditures or losses were necessary." *Thai v. Int'l Bus. Machines Corp.*, 93 Cal. App. 5th 364, 370 (2023). Plaintiff alleges "Defendants wrongfully required Plaintiff and the Class to pay expenses that they incurred in direct discharge of their duties for Defendants without reimbursement, such as the occasional use of personal cellular telephones, and the purchase of specific types of shoes and clothing" in violation of California Labor Code § 2802. (Compl. ¶¶ 18, 48–51.)

Defendant argues that, in order to evaluate this claim, this Court will need to interpret Articles 14 and 31 of the CBA. Article 14 provides, "If the Employer desires its employees to wear a uniform, the Employer shall launder and furnish the uniforms" and "Employees who have not been provided with a uniform or who are awaiting

alteration of a uniform shall be excused from wearing uniforms." (ECF No. 1-3, Ex. E at 13.) Meanwhile, Article 31, entitled "PROTECTIVE CLOTHING/EQUIPMENT," states that the employer "must provide adequate protective equipment, such as headgear, parkas, gloves and suitable protective footgear." (*Id.* at 25.) According to Defendant, Plaintiff's claim will require the Court to interpret the terms "uniforms," "protective clothing," and "suitable protective footgear" because the meaning of these terms will determine whether Defendant required Plaintiff to purchase these "shoes and clothes." (Opp'n at 16–17.) But whether the items Plaintiff purchased fall within the meaning of these terms is irrelevant to whether Defendant required Plaintiff to purchase them and whether Defendant should have reimbursed such purchases. At most, the CBA would answer whether the CBA required Defendant to "furnish" these items to Plaintiff, a wholly irrelevant question as Defendant's obligation to reimburse Plaintiff for necessary expenses exists independent of the CBA. *See* Cal. Lab. Code § 2802; *see also Zamora v. Overhill Farms, Inc.*, No. 2:19-cv-03891-VAP-AFM, 2019 WL 3942961, at *5 (C.D. Cal. Aug. 21, 2019) (holding CBA provision requiring employer to supply necessary uniforms did not substantially relate to Plaintiff's reimbursement claim due to the "non-waivable nature of an employee's right to reimbursement for necessary expenses"); *Williams v. Hollywood Park Racing Association LLC*, No. 12-cv-01184-DDP-FFM, 2012 WL 1425152, at *3 (C.D. Cal. Apr. 24, 2012) (finding Plaintiff's claims not preempted by LMRA § 301 because plaintiff's "uniform allegations may involve independently existing state law rights to reimbursement, provided by California Labor Code section 2802"). Defendant has not identified any way in which resolution of Plaintiff's claim would require the Court to answer this hypothetical dispute over whether these items fall with the meaning of the identified CBA terms. While it is theoretically possible that the deciding court may have to interpret these terms, Defendant has not identified any realistic scenario, and mere possibilities offer "too thin a reed" on which to base federal question jurisdiction. *See Brasier v. Valdez Painting, Inc.*, No. 2:20-cv-01223-KJM-AC, 2020 WL

5518463, at *3 (E.D. Cal. Sept. 14, 2020) (rejecting argument that an "essentially speculative" dispute over the meaning of a CBA provision could supply a basis for federal question jurisdiction grounded in § 301). "Section 301 does not allow defendants to bootstrap a federal question from 'hypothetical connection[s]' between state law claims and the CBA." *Id.* (quoting *Burnside*, 491 F.3d at 1060) (alterations in original). What Defendant identifies here is no more than the kind of "creative linkage" between the claim and the CBA that the Ninth Circuit has deemed insufficient. *Cramer*, 255 F.3d at 692.

## II. Diversity Jurisdiction

### A. Plaintiff Brings a Factual Challenge to Jurisdiction

Plaintiff mounts a factual attack on Defendant's assertion of diversity jurisdiction by contesting the truth of Defendant's allegations in the Notice of Removal. Plaintiff asserts that Defendant's assumptions of the facts underlying Plaintiff's claims are unsupported by the language in the Complaint and unreasonable, absent supporting evidence. (*See, e.g.*, Mot. at 2 (arguing "Defendant's damage calculations rely on unreasonable assumptions regarding violation rates, unsubstantiated estimates of unpaid work hours, and speculative attorney fees calculations"); *id.* at 17–18 (asserting "Defendant's calculation of damages for [Plaintiff's fifth] claim is speculative and unsupported by the allegations in the complaint or competent evidence"). These assertions constitute a factual challenge to Defendant's invocation of jurisdiction as each challenges the facts Defendant assumes underpin Plaintiff's claims. *See Harris v. KM Indus., Inc.*, 980 F.3d 694, 701 (9th Cir. 2020) (concluding plaintiff's "motion to remand raised a factual challenge" to defendant's assumptions that all class members "worked shifts long enough to be eligible for meal and rest periods"). Therefore, as Plaintiff makes a factual attack, the burden is on Defendant to "support [its] jurisdictional allegations with 'competent proof,' under the same evidentiary standard that governs in the summary judgment context." *Leite*, 749 F.3d at 1121 (citations omitted).

**B. Amount in Controversy**

As the parties do not dispute that they are completely diverse, the sole issue before the Court with respect to this jurisdictional basis is whether the amount in controversy exceeds $75,000. (*See* Opp'n at 6; *see generally* Mot.)

**1. Attorneys' Fees**

Even accepting as true the other calculations in the Notice of Removal, this motion succeeds as Defendant's calculation of attorneys' fees fatally overestimates the amount controversy. The properly calculated attorneys' fees leave the amount in controversy well below the threshold $75,000.

Attorneys' fees may be included in the amount in controversy when they are available pursuant to a statute or statutes underlying the plaintiff's claims. *Shoner v. Carrier Corp.*, 30 F.4th 1144, 1148 (9th Cir. 2022); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). If Plaintiff prevails, Plaintiff would be entitled to attorneys' fees pursuant to Cal. Civ. Proc. Code § 1021.5. (*See* Compl. at 21–23 (seeking attorneys' fees pursuant to this provision).) Such fees are thus considered when assessing the amount in controversy. *See Perez v. WinnCompanies, Inc.*, No. 1:14-cv-01497-LJO, 2014 WL 5823064, at *10–11 (E.D. Cal. Nov. 10, 2014) (including attorneys' fees sought under Cal. Civ. Proc. Code § 1021.5 in the amount in controversy).

Defendant estimates the attorneys' fees in this case place $68,220 in controversy. Based on a declaration Plaintiff's counsel submitted in another wage and hour matter, Defendant predicts Plaintiff's counsel will bill an average of $758 per hour. (Notice of Removal ¶¶ 39–40 n.15.) According to Defendant, Plaintiff's counsel will expend 90 hours litigating Plaintiff's individual claim, broken down as follows: "investigating Plaintiff's claims (5 hours), propounding and reviewing discovery (20 hours), and preparing for and attending Plaintiff's deposition (15 hours), one Person Most Qualified deposition (15 hours), mediation and/or a mandatory settlement conference (15 hours) and the trial on Plaintiff's standing (i.e., his individual claims) (20

hours)." (*Id.* ¶ 39; Opp'n at 15.) Defendant therefore concludes the attorneys' fees at stake total at least $68,220 (758 [hourly rate] x 90 [hours]). (Notice of Removal ¶ 40 n.15.)

Plaintiff disagrees with Defendant's calculation, and the Court concludes Plaintiff has the better of the argument. There are two key principles for calculating the amount in controversy in this context. First, though this is a putative class action, because Defendant removed the case pursuant to § 1332(a) the claims of putative class members may not be aggregated with Plaintiff's claims to reach the amount in controversy.[2] *Gibson v. Chrysler Corp.*, 261 F.3d 927, 943–944 (9th Cir. 2001), *holding modified on other grounds by Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005)). Second, when attorneys' fees are sought pursuant to California Civil Procedure Code § 1021.5, the fees for work done on behalf of the class may not be attributed to Plaintiff. "When the rule is that claims are not aggregated . . . it would seriously undermine the anti-aggregation rule to allow attorney's fees to be allocated solely to a named plaintiff in determining the amount in controversy." *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1049 (N.D. Cal. 2014) (quotation omitted). Thus, in *Gibson v. Chrysler Corp.*, the Ninth Circuit found that attorneys' fees sought in a class action under California Civil Procedure Code § 1021.5 could not be allocated solely to the named plaintiff for purposes of satisfying the amount in controversy. 261 F.3d at 941–42 ("We therefore hold that, under this California law at least, attorneys' fees are not awarded solely to the named plaintiffs in a class action, and that they therefore cannot be allocated solely to those plaintiffs for purposes of amount in

---

[2] For this reason, Defendant's argument that Plaintiff has conceded by judicial admission that the amount in controversy is met is also unpersuasive. The First Amended Complaint states that "Plaintiff and the Class suffered, and will continue to suffer, damages in amounts which are presently unknown Plaintiff and the Class, but which exceed the jurisdictional minimum of this Court." (Compl. ¶ 35.) Defendant argues this is a "judicial admission" that the amount in controversy exceeds $75,000 "that Plaintiff cannot now seek to contradict." (Opp'n at 8.) This statement, at most, concedes that the combined damages incurred by both Plaintiff and the putative class exceed $75,000. But, as these claims cannot be aggregated, this allegation has no bearing on whether Plaintiff's individual claims place $75,000 into controversy.

controversy.”). The court based this finding on the language of § 1021.5, which provides that a court may award attorneys’ fees “to a successful party” rather than to a named or representative party. *Id.* at 942–43 (quoting Cal. Civ. Proc. Code § 1021.5).

Defendant fails to account for the second principle when estimating the amount in controversy. Though Defendant is correct that it did not and should not include in this estimate additional hours counsel would expend on behalf of the class and not Plaintiff specifically, Defendant’s estimation of anticipated hours spent on “prosecuting Plaintiff’s individual claims” suffers a similar defect. (*See* Opp’n at 15 (emphasis omitted).) Much of the legal work Defendant identifies, such as taking Plaintiff’s and the Person Most Qualified’s deposition, attending a mediation or settlement conference, and preparing for trial, will inevitably contribute to the resolution of Plaintiff’s class claims as well. *See Rodriguez v. Goodrich Corp.*, No. 14-cv-01026-JAM-AC, 2014 WL 3842904, at *3 (E.D. Cal. Aug. 1, 2014) (finding defendants’ attorneys’ fees estimates were not based solely on fees applicable to plaintiff because they included pretrial activities that “would be conducted on behalf of the entire putative class, not merely Plaintiff as an individual”). By assuming the attorneys’ fees incurred in these tasks are attributable only to Plaintiff’s individual claims, Defendant effectively allocates much of the total attorneys’ fees for the class solely to Plaintiff contrary to the rules set forth in *Gibson*.

Rather, in accordance with *Gibson*, “any attorneys’ fees awarded in this action [are] to be divided among all members of the class.” 261 F.3d at 943. If Defendant is correct that the attorneys’ fees in this case would equal $68,220, this number must still be divided by the number of class members. Plaintiff estimates that the class will consist of over 100 individuals. (Compl. ¶ 26.) Accordingly, Plaintiff’s claims alone only put, at most, $682.20 of attorneys’ fees into controversy. Assuming without deciding that the remainder of Defendant’s calculations are reasonable, the amount

put into controversy with $682.20 in attorneys' fees is $30,213.55.[3] Defendant has thus failed to prove by a preponderance of the evidence that the amount in controversy exceeds the required $75,000. Therefore, the Court lacks diversity jurisdiction over this case.

**CONCLUSION**

For the reasons stated above, Plaintiff's Motion to Remand (ECF No. 13) is GRANTED. The Clerk of Court is directed to remand this case to the Sacramento County Superior Court and close the case. This order resolves all pending motions.

IT IS SO ORDERED.

Dated: **November 24, 2026**

Daniel J. Calabretta

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC7 – Purnell25cv02922.mtr

[3] 8,035.20 [off-the-clock work] + 8,035.20 [liquidated damages for unpaid off-the-clock work] + 3,180.60 [meal premiums] + 3,180.60 [rest premiums] + 240.00 [expense reimbursement, cell phones] + 163.75 [expense reimbursement, shoes & clothing] + 6,696.00 [waiting time penalties] + 682.20 [attorneys' fees] = 30,213.55. (*See* Notice of Removal ¶ 40 (providing Defendant's estimates of the amount put into controversy by each of Plaintiff's claims).) Defendant notes that these calculations "do not include the amount Plaintiff placed in controversy with his overtime, regular rate of pay, and wage statement penalty claims or by requesting the Court to award 'other and further relief the Court may deem just and proper.'" (*Id.* ¶ 41.) As Defendant has not supplied any estimates for the amount put into controversy by these claims, the Court does not include them in its calculation of the total amount in controversy.